## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fitger's On-the-Lake, LLC a Minnesota
limited liability company,

      Plaintiff,

vs.

The Fitger Company, LLC, a Connecticut
limited liability company,

Fitger Brewing Company LLC, a
Connecticut limited liability company,

Michaud Distributing, Inc., a Minnesota
corporation,

United States Fire-Arms Manufacturing, a
Connecticut Corporation,

and

Douglas Donnelly, an individual,

      Defendants.

**Civil No. 07-CV-4687 (MJD/RLE)**

**PRELIMINARY INJUNCTION**

This matter came for hearing before the Court on December 18, 2007, on the

motion of Plaintiff Fitger's On-the-Lake, LLC for a Preliminary Injunction.  Felicia J.

Boyd, Faegre & Benson, LLP appeared on behalf of the Plaintiff.  Edward R. Schwartz,

Christie, Parker & Hale, LLP, and Paul W. Wojciak, Johnson Killen & Seiler, appeared

on behalf of the Defendants.

      1.    <u>Dataphase Systems, Inc. v. CL Systems, Inc.</u>, 640 F.2d 109, 113 (8th Cir.

1981), sets forth four factors relevant to the question of whether an injunction should

issue:  (1) the threat of irreparable harm to the moving party if an injunction is not

granted, (2) the harm that may be suffered by the moving party if injunctive relief is denied compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits.

2.      It is probable that Plaintiff Fitger's On-the-Lake, LLC ("Fitger's") will succeed on the merits of all of its claims.

3.      To succeed on a claim for trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) and a claim for trademark infringement under the common law of Minnesota, a plaintiff must establish that the plaintiff's mark is a valid trademark and that the defendant's use is likely to confuse consumers as to the source of the product.

4.      The Fitger's Inn and Brewery Complex is located on the site of a brewery that is over 125 years old with a distinctive appearance of an industrial smokestack and water tower bearing the Fitger's name and its Ship and Star Logo:



5.      Duluth's first brewery was started by Sidney Luce in 1857. Luce built his brewery a block and a half from our present site, and utilized a small, clear brook which later was known as Brewery Creek. His brewery grew, and in 1881 Michael Fink purchased the brewery. Fink built a new, larger brewery on the present Fitger's site.

Fink's Lake Superior Brewery soon hired a new brewmaster, a young German named August Fitger who graduated from one of Germany's premier brewing schools. Within the year, August Fitger owned half of the brewery. Then, in 1884, Percy Anneke bought into the brewery and became Fitger's partner. The brewery was renamed the A. Fitger & Co. / Lake Superior Brewery.

6.     The brewery's beer production continued for forty years, until Prohibition (1920 -1933) changed matters for all breweries around the nation. Many went out of business. Fitger's stayed alive by turning out new products such as soda pop and candy bars. Candy lovers in Duluth during the "Roaring Twenties" enjoyed the Fitger's Flapper, the Fitger's Spark Plug, the Five Cent Fitger's Nut Goodie, the King Bee Nougat, and Fitger's Skookum . . . "A Bully Good Bar." Along with the candy bars, Fitger's produced Lovit Pop.

7.     After the repeal of Prohibition, Fitger's resumed brewing strong beer, and business boomed during the 1930's. Production was up to 100,000 barrels a year by 1940. During this time, the Brewery also produced Silver Spray Champagne, advertised as "The Best Mixer In A Crowd." The Beerhalter family purchased the Brewery in 1944, and operated if for the next quarter century. Fitger's Brewery closed its doors on September 30, 1972, ending 115 years of brewing on the shores of Lake Superior.

8.     The Fitger's Inn and Brewery Complex was re-opened in September of 1984 with a 48 room hotel, two full service restaurants, and a retail center. The Fitger's

Brewhouse is once again brewing beer on the premises for on-site and off-site consumption.

9.      Due to its extended history, Fitger's has numerous distinctive trademarks and logos that serve to differentiate Fitger's products and services in the market. Each of these marks (collectively referred to herein as the Fitger's Marks) belongs exclusively to Fitger's and are of significant value. The marks include:

- FITGER'S;



-

   (hereinafter referred to as the Star and Ship Logo);

- DOG'S HEAD LAGER;



-

   (hereinafter referred to as the Dog's Head Lager Label]

FITGER'S REX BEER;

- 

(hereinafter referred to as the Fitger's Rex Beer Label);

- NORDLAGER;

- 

(hereinafter referred to as the Fitger's Nordlager Label)

- PICKWICK ;

- 

(hereinafter referred to as the Pickwick Label);

- FITGER BUILDING CIRCA 1911; and



- 

(hereinafter referred to as the Fitger Building Logo).

Fitger's owns exclusive common law trademark rights to each of the above Fitger's Marks.

10.     Fitger's has used the Fitger's marks alone and in combination with each other on a large number of goods and services for decades including, signage on the front of the Fitger's Inn and Brewery Complex; letterhead, notepads, note cards, postcards, envelopes, business cards, brochures, pens; books about Fitger's and its history; blended coffees; coffee mugs, beer steins drinking glasses, shot glasses, wooden boxes to hold glasses; clothing; cutting boards; serving trays; candle holders; coasters; and promotional posters, calendars of events, print and broadcast advertisements, and billboards.   Plaintiff

has previously sold beer under the Fitger's name under an agreement with Rohlfing of Duluth, Inc., which predates Defendants' use of the Marks for sales of beer.

11.     In addition to these uses of the Fitger's Marks, the Fitger's Marks are used in connection with the sale of beer produced by the Fitger's Brewhouse under implied license from Fitger's for both on-site and off-site consumption. Indeed, each week, the Fitger's Brewhouse sells an average of 360 refillable, sixty-four-ounce "growlers" of Fitger's beer so that customers can take home Fitger's beer to enjoy.

12.     "The existence of an implied license depends on the objective conduct of the parties." Lutheran Ass'n of Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc., No. Civ.03-6173 PAM/RLE, 2004 WL 2730104, at *8 (D. Minn. Nov. 19, 2004) (unpublished). "An implied license arises out of the objective conduct of the parties, which a reasonable person would regard as indicating that an agreement has been reached. Permission to use the marks along with the exercise of reasonable control over such use can lead to the conclusion that an implied license existed even where no written agreement was made." Northwest Airlines, Inc. v. NWA Fed. Credit Union, No. Civ. 03-3625 (DWF/SRN), 2004 WL 1968662, at *5 (D. Minn. Sept. 2, 2004) (unpublished) (citations omitted). The Court examines whether the plaintiff "monitored and controlled the use of the [mark]," whether the alleged licensee "used the mark subject to the authorization and control of plaintiff, and [whether] both parties understood this arrangement." Birthright v. Birthright Inc., 827 F. Supp. 1114, 1135 (D.N.J. 1993) (citation omitted). An implied licensee acquires no ownership interest in the mark and cannot transfer rights to another party. Lutheran Assoc. of Missionaries

& Pilots, Inc., 2004 WL 2730104, at *10 n.7; see also E.G.L. Gem Lab Ltd. v. Gem

Quality Inst., Inc., 90 F. Supp. 2d 277, 300 (S.D.N.Y. 2000).

13.     In this case, Plaintiff and Fitger's Brewhouse have a licensor/licensee

relationship because 1) they executed various lease agreements memorializing their

understanding that Plaintiff alone owned the Marks and that Fitger's Brewhouse was a

mere licensee and both Nelson and Raymond averred that they understood this when they

entered the original lease; 2) there were restrictive covenants in the lease agreements

limiting the use of the Fitger's Mark to the leased location and precluded the use of the

Fitger's name on beer sold off of the premises; 3) Plaintiff controlled Fitger's

Brewhouse's use of the Marks by, for example, requiring that it cease the sale of a CD

which featured the Fitger's NORDLAGER label; and 5) Plaintiff's Vice President

regularly discusses promotions, expansion, and changes to the Brewhouse menu with

Fitger's Brewhouse.

14.     The Fitger's Marks are known throughout Minnesota and the country as

identifying Fitger's as a source of quality services and products. The Fitger's Marks are

of great and incalculable value to Fitger's, which spends thousands of dollars each year

on advertising and promotion that prominently features the Fitger's Marks.

15.     Fitger's extensive use in interstate commerce of the Fitger's Marks has

caused the public to associate goods and services bearing the Fitger's mark and logos

with Fitger's and Fitger's alone.

16.     Fitger's closely controls the use and reproduction of the Fitger's Marks to ensure that all of its current and potential customers can rely upon the marks as signifying quality services and products.

17.     Fitger's substantial investment in and use of the Fitger's Marks has helped it realize substantial revenue.

18.     Fitger's also maintained a web site at www.fitgers.com where it advertises its products and services and provides information about the hotel, the Fitger's Brewhouse, and the history of the company. This website also features several of the Fitger's Marks.

19.     Consumers associate the Fitger's Marks exclusively with Plaintiff.  The Fitger's Marks are each distinctive and famous.

20.     Defendants The Fitger Company, LLC, Fitger Brewing Company LLC, Michaud Distributing, Inc., United States Fire-Arms Manufacturing, and Douglas Donnelly (collectively "TFC") knowingly and intentionally have manufactured, promoted, and sold bottled beer that incorporates the Fitger's Marks without permission from Plaintiff Fitger's to do so.

The following is a picture of Defendants' beer bottle:



Defendants' bottle incorporates the FITGER'S mark and the Star and Ship Logo and a Fitger's predecessor company name "A. Fitger & Co." A. Fitger & Co. is not the actual brewer of the beer.

21.     Defendants' packaging is shown below:



Defendants' packaging includes the Fitger's Marks in multiple locations.

22.     Armed with this knowledge, defendant Donnelly, acted to trade on the goodwill of the Fitger's Marks and to deceive consumers as to the origin of his products. Defendant Donnelly created companies that included the Fitger's name as part of the company name.  Defendant TFC filed applications for federal trademark registration for the FITGER'S mark, DOG'S HEAD mark, REX mark, PICKWICK mark, NORDLAGER mark, the SILVER SPRAY mark and the Star and Ship Logo. Defendant Donnelly has signed statements of use for many of these applications.

23.     In filing for each of these federal trademark registrations, defendant TFC falsely advised the United States Patent and Trademark Office under oath that TFC was the sole owner of each of the subject marks and that it had the exclusive right to use the marks for the goods described in the applications.  Defendant TFC had no factual basis for these false statements of ownership and trademark rights.

24.     Defendants' use of the Fitger's Marks to identify their bottled beer has created a likelihood of confusion as to the source of the bottled beer.

25.     Defendants' have intentionally tried to confuse consumers as to the source of their bottled beer by using identical copies of all of the Fitger's Marks on the product and the product packaging.  The fact that Donnelly may be related to August Fitger does not grant Defendants the right to use Fitger's Marks and trade in their goodwill.  See W-K-M Div. Of Joy Mfg. Co. v. WK Indus., 2 U.S.P.Q.2d 1967, 1968 (S.D. Tex 1987) ("[A] person has no right to use his name as a trademark simply because of the fortuity of his parents and their choice of names.").

26.     Multiple instances of actual consumer confusion, mistake and/or deception has resulted from Defendants' use of all of the Fitger's Marks on their bottled beer product and product packaging.

27.     Defendants adopted the domain name www.fitger.com with the bad faith intent to confuse, mislead and profit from the use of the "Fitger" mark.  The domain name www.fitger.com is virtually indistinguishable from www.fitgers.com

28.     To succeed on its claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must establish (1) that the defendant made a false statement

of fact about its product in a commercial advertisement, (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience, (3) the deception is likely to influence the purchasing decision, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result.

29.     Defendants have made literally false statements on its products and in its marketing literature.  These statements include, but are not limited to, "Since 1881;" "Welcome to the Official Fitger Beer Site;" "Fitger Brewing Company – Since 1881 – Celebrating 125 years of Brewing Excellence;" and "Doug Fitger."

30.     Likewise, Defendants' website and attached press release include false statements, including, but not limited to, the following:

- "The Fitger Brewing Company is proud to Celebrate the 125th Anniversary of Fitger's Beer with our Original Family Recipe issued in a Special 125th Anniversary 6-Pak Carrier and Bottle."

- "Originally founded in Duluth, MN, on the shores of Lake Superior by August Fitger, the Fitger Brewing Co. was once the largest of the regional brewers with over 100,000 barrels produced at the height of manufacture in the 1930s."

- "Fitger Brewing Co.—best known for traditional lagers under the Fitger's®[,] Nordlager®, Rex®, Dog's Head®, Pickwick® and A. Fitger & Co's®, trademark labels [sic], the original Fitger Brewing Co. continued throughout prohibition to brew and deliver 'Non-Alco' beer and the manufacture and distribution of products as diverse as soda, candy, and cigars."

31.     Defendants have not brewed beer of any kind "Since 1881" nor are they celebrating their "125th Anniversary."  Defendants' references to "since 1881" and "125 years of brewing excellence" would, when considering the website, press release, and products, each in their entirety, send the necessarily implied message that Defendants have been in operation since 1881.  Defendants' statement that "Fitger Brewing Co." was "[o]riginally founded in Duluth, MN, on the shores of Lake Superior by August Fitger" is literally false because such a statement made by an entity called Fitger Brewing Co., unequivocally conveys the message that August Fitger founded Defendant FBC in Duluth many years ago.  The marks at issue have not yet been registered to Defendants.

32.     The noted statements are have a tendency to mislead consumers and are material.

33.     Defendants have caused their literally false statements to enter interstate commerce.

34.     Fitger's has been injured as a result of Defendants' literally false statements, and is likely to continue to be injured by these literally false statements.

35.     To succeed on its claim for deceptive trade practices under Minn. Statute §§ 325D.44(2), a plaintiff must show that the defendant in the course of business, has caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

36.     To succeed on its claim for deceptive trade practices under Minn. Statute §§ 325D.44(3), a plaintiff must show the defendant in the course of business, has caused a

likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

37.    To succeed on its claim for deceptive trade practices under Minn. Statute §§ 325D.44(5), a plaintiff must show the defendant in the course of business, has represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

38.    To succeed on its claim for deceptive trade practices under Minn. Statute §§ 325D.44(13), a plaintiff must show the defendant in the course of business, has engaged in other conduct which similarly created a likelihood of confusion or of misunderstanding.

39.    Fitger's likelihood of success on its Lanham Act claims also demonstrates it is likely to prevail on its claims under Minnesota Stat. § 325D.44.  See DeRosier v. 5931 Business Trust, 870 F. Supp. 941, 948 (D. Minn. 1994).

40.    Defendants' past actions indicate that it will continue to violate Plaintiff's rights.

41.    Defendants' actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Minn. Statute §§ 325D.44(2)-(3), (5), and (13), and the common law of Minnesota.

42.    To succeed on its claim of dilution and tarnishment under Minn. Stat. § 333.285, a plaintiff must show that the defendants has engaged in conduct likely to dilute and tarnish the distinctive quality of the marks.

43.     Fitger's has shown that it has the owner of the Fitger's Marks and that those marks are famous and distinctive within the meaning of Minn. Stat. §333.285.  The Fitger's Marks have been used for years in connection with the Fitger's Brewhouse and hotel located on the site of the historic brewery for a variety of products, including beer and beer-related products.  Plaintiff has shown that, in relation to beer, it and its licensee have used the Fitger's Marks exclusively.  Plaintiff has invested substantial sums in advertising and promotions that prominently feature the Fitger's Marks.  These ads appear throughout the Upper Midwest and Canada and reach tens of thousands of people. Defendants' use of the Fitger's Marks has diluted and tarnished the distinctive quality of the Fitger's marks, and Defendants willfully intended to cause dilution.  Defendants began using the Marks solely to capitalize on Plaintiff's reputation and history, and Defendants have profited from their actions. Defendants' continued use of the Fitger's Marks is likely to dilute and tarnish the Fitger's Marks.

44.     The Court has reviewed Defendants' allegations of unclean hands and concludes that the record does not support an unclean hands defense to this preliminary injunction.

45.     Fitger's has suffered irreparable injury as a result of Defendants' unlawful actions and will continue to suffer irreparable injury if Defendants' trademark infringement and literally false statements are allowed to continue.  Irreparable harm exists as a matter of law where there is a trademark infringement.  <u>Minnesota Mining & Mfg. Co. v. Taylor</u>, 21 F. Supp. 2d 1003, 1004 (D. Minn. 1998).  The same presumption

of irreparable harm applies to false advertising.  <u>See United Indus. Corp. v. Clorox Co.</u>, 140 F.3d 1175, 1183 (8th Cir. 1998).

46.    The irreparable harm that Plaintiff will suffer clearly outweighs any potential harm Defendants may suffer from the granting of this Order, particularly in light of the substantial investment Plaintiff has made in developing its trademarks.

47.    It is in the public interest to protect the Fitger's Marks because Defendants' use of the Fitger's Marks is likely to confuse, and has actually confused, the public as to both the source and sponsorship of Defendants' bottled beer.  Infringement of trademarks is inherently contrary to the public interest.  <u>See Am. Dairy Queen Corp. v. New Line Prods., Inc.</u>, 35 F. Supp. 2d 727, 733 (D. Minn. 1998).  It is further in the public interest to prevent Defendants from making false and misleading statements about the source, sponsorship and affiliation of their bottled beer because such statements are likely to mislead customers and cause them to purchase a beer believing that it originated from, or is otherwise sponsored by, affiliated with or endorsed by, Plaintiff.  It is in the public interest to prevent the circulation of products that are intended to deceive consumers as to their source or qualities.

48.    Thus, the <u>Dataphase</u> factors weigh in favor of issuance of an order preliminarily enjoining Defendants as more fully described below.

49.    Plaintiff requests no bond or a de minimis bond.  Defendants request a bond, but do not request a particular amount.  The Court concludes that some bond is necessary because Defendants' businesses are at risk if this injunction is wrongfully

issued.  Based on its review of the record, the Court orders Plaintiff to post a bond in the

amount of $25,000.00.

Upon consideration of the files, records, and proceedings in this action**, IT IS**

**HEREBY ORDERED** that Plaintiff Fitger's On-the-Lake, LLC's motion for a

preliminary injunction [Docket No. 3] is **GRANTED** as follows:

1) Defendants and their officers, agents, servants, employees, attorneys, and all

persons in active concert or participation with them who receive actual notice of

the order, are preliminarily enjoined from:

(a)      using any of the Fitger's Marks, or any other similar term(s) or

logo(s) likely to cause confusion therewith, including "A. Fitger & Co."

and "www.fitger.com" as Defendant's domain name, directory name, web

site, or web page, in buried code or metatags on Defendant's web site or

web page, or in connection with the retrieval of data or information or on

other goods or services, or in connection with the advertisement, marketing,

distribution, sale or offer for sale of its goods and/or services related to

beer.  To the extent that Defendants have shipped any products that include

any of the Fitger's Marks, or marks confusingly similar thereto, Defendants

are directed to immediately recall those products from any retail or sales outlet, including the recall of any all promotional materials associated therewith, including, but not limited to, any and all advertising, circulars, price lists, signs, banners, business stationary, prints, packages, labels, containers, freights, cartons, receptacles, wrappers, art work, and other materials in its possession or custody or under Defendants' control that infringe and/or dilute any of Fitger's Marks;

(b)     otherwise infringing Fitger's rights in any of the Fitger's Marks and in the domain name "www.fitgers.com," including registration of any other domain name that is similar to or likely to cause confusion with the Fitger's Marks;

(c)     from unfairly competing with Fitger's;

(d)     from using any other trademark, service mark, trade name, corporate name, word or symbol or doing any other acts likely to induce the belief that Defendants' commercial activities, products, services or business, are Fitger's commercial activities, products, services or business or that Defendants are in any way authorized or sponsored by or connected, endorsed, or associated with Fitger's or with Fitger's commercial activities, products, services or business; and

(e)     from using any other trademark, service mark, trade name, corporate name, word or symbol or doing any other acts likely to dilute or tarnish any of the famous Fitger's Marks.

2) Defendants, and all others acting in concert with them, are directed to file with the Court and to serve on Fitger's within (5) days after service of this injunction on Defendants a report in writing setting forth in detail the manner and form in which Defendants have complied with the injunction.

3) Defendants are directed to file with the Court and to serve on Fitger's within (5) days after service of this injunction, a detailed accounting showing the sales and shipment of any bottled beer product that included any of the Fitger's Marks as well as the amount of beer products that were returned to Defendants following compliance with the recall directives herein.

4) Defendants are directed to advise the United States Patent and Trademark Office in connection with the pending trademark applications for "Fitger's" (U.S. Serial No. 78798573), "Dog's Head" (U.S. Serial No. 78798569), "Rex" (U.S. Serial No. 78798582), "Pickwick" (U.S. Serial No. 78798578), "Nordlager" (U.S. Serial No. 78798580), and the Star and Ship Logo (U.S. Serial No. 78798576) and any other trademark application that is based in whole or in part on a word, symbol or design used by Plaintiff Fitger's or any of its predecessor entities, that the ownership and use rights that are the subject of each of said applications has been challenged in this proceeding, to provide a copy of this Order with each submission, and to request that examination of each of said applications be immediately suspended pending decision by this Court as to the ownership of the marks that are the subject of said applications.

5) This order shall be effective immediately.

6)  Plaintiff is ordered to post a bond in the amount of twenty-five thousand

dollars ($25,000.00).


Dated:  December 19, 2007

s / Michael J. Davis
Michael J. Davis
U.S. District Judge
UNITED STATES DISTRICT COURT